Filed 7/16/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ADAMMA ISON et al., <br><br> Plaintiffs and Appellants, <br> v. <br> RICARDO LARA, as Insurance Commissioner, etc., <br><br> Defendant and Respondent; <br> FARMERS INSURANCE EXCHANGE et al., <br><br> Interveners and Respondents. | A170267 <br><br> (Alameda County <br> Super. Ct. No. 22CV008022) |

Thirty years ago, the commissioner of the Department of Insurance (Commissioner) promulgated a regulation permitting private automobile insurers to consider a driver's marital status as a factor when setting insurance rates where marital status bears "a substantial relationship to the risk of loss" as required by Proposition 103 — the voter-approved initiative titled the Insurance Rate Reduction and Reform Act, which was enacted to "protect consumers from arbitrary insurance rates and practices" and "ensure that insurance is fair, available, and affordable for all Californians."  (Ins. Code, § 1861.01 et seq., § 1861.02, subd. (a); Ballot Pamp., Gen. Elec. (Nov. 8, 1988) text of Prop. 103, § 1, p. 99, italics omitted; Cal. Code Regs., tit. 10, § 2632.5, subd. (d)(9) (regulation 2632.5(d)(9) or marital status regulation).)

1

In 2022, Adamma Ison and other unmarried automobile insurance policyholders petitioned for a writ of mandate to compel the Commissioner to rescind or amend the regulation, arguing it violates the Unruh Civil Rights Act (Civ. Code, § 51, the Act) and the Rosenthal Auto Insurance Nondiscrimination Law (Ins. Code, § 11628 (RAIN law); undesignated statutory references are to this code). To wit, the Legislature amended the Act in 2005 to prohibit businesses from discriminating against persons based on marital status — a characteristic unmentioned in its former iterations. (Stats. 2005, ch. 420, § 3; former Civ. Code, § 51, subd. (b).) And in 2008, it amended the RAIN law to prohibit any characteristic listed or defined in the Act from constituting a condition or risk for charging a higher insurance rate or premium. (Stats. 2008, ch. 682, § 7; § 11628, subd. (a).) While Ison does not dispute that marital status may justify a higher rate — that is, that it has been shown to have a substantial relationship to the risk of loss — she contends these amendments rendered the regulation inconsistent with its authorizing statutes, which require insurance businesses to comply with the Act.

The trial court denied the writ after concluding a limiting provision in the Unruh Civil Rights Act — "This section shall not be construed to confer any right or privilege on a person that is conditioned or limited by law" — meant that the after-enacted Act's protections did not preclude the already-existing marital status regulation specifically addressing insurance rating factors. (Civ. Code, § 51, subd. (c) (Section 51(c)).) Ison appealed. We affirm.

## BACKGROUND

In 1988, voters approved Proposition 103, which declared that existing laws allowed "insurance companies to charge excessive, unjustified and arbitrary rates." At the time, there was an open competition system of

regulation, "under which 'rates [were] set by insurers without prior or subsequent approval by the Insurance Commissioner.' " (*20th Century Ins. Co. v. Garamendi* (1994) 8 Cal.4th 216, 240.) Proposition 103 made "numerous fundamental changes in the regulation of automobile and other types of insurance." (*Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 813, 812.) It added "to the Insurance Code article 10—'entitled "Reduction and Control of Insurance Rates." ' " (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1035 (*State Farm*).) Among other things, it required the "business of insurance" to comply with "the laws of California applicable to any other business, including, but not limited to, civil rights laws (Section 51 to 53, inclusive, of the Civil Code)" — including the Unruh Civil Rights Act. (§ 1861.03, subd. (a); Civ. Code, § 51.) It also required the Commissioner to approve insurance rates and "provide[d] for consumer participation in the administrative ratesetting process." (*Walker v. Allstate Indemnity Co.* (2000) 77 Cal.App.4th 750, 753; § 1861.01, subd. (c).)

Rates could not be unfairly discriminatory or otherwise violate provisions governing rates and ratings: "No rate shall be approved or remain in effect which is excessive, inadequate, unfairly discriminatory or otherwise in violation of this chapter." (§ 1861.05, subd. (a) [within ch. 9, titled "Rates and Rating and Other Organizations"].) It also added section 1861.02 to regulate automobile insurance rates: "Rates and premiums for an automobile insurance policy . . . shall be determined by application of the following factors in decreasing order of importance: [¶] (1) The insured's driving safety record. [¶] (2) The number of miles he or she drives annually. [¶] (3) The number of years of driving experience the insured has had. [¶] (4) *Those other factors that the commissioner may adopt by regulation and that have a substantial relationship to the risk of loss*." (§ 1861.02, subd. (a)(1)–(4), italics

3

added.)  The provision further specified that, "[n]otwithstanding any other provision of law, the use of any criterion without approval shall constitute unfair discrimination."  (*Id.*, subd. (a)(4).)  An uncodified provision of Proposition 103 notes that a two-thirds majority of the Legislature is required to amend these provisions.  (Ballot Pamp., Gen. Elec. (Nov. 8, 1988) text of Prop. 103, § 8, p. 144.)

Pursuant to section 1861.02, the Commissioner in 1996 adopted regulations for rating factors — "any factor, including discounts, used by an insurer which establishes or affects the rates, premiums, or charges assessed for a policy of automobile insurance" — for private automobile insurance. (Cal. Code Regs., tit. 10, §§ 2632.1, 2632.2, subd. (a).)  The regulations prohibit insurers from using rating factors beyond those identified.  (Cal. Code Regs., tit. 10, § 2632.4, subd. (a) ["No insurer shall use a rating factor which is not set forth in these regulations"].)  In addition, "no insurer shall adopt any rating factor based in whole or in part upon the race, language, color, religion, national origin, ancestry, age, political affiliation, or sexual orientation of any person."  (*Ibid.*)  Nor may insurers use a rating factor "that does not bear a substantial relationship to loss."  (*Id.*, subd. (b).)  Certain rating factors are mandatory — an insurer must utilize the insured's driving safety record, miles driven annually, and years of driving experience for determining rates for coverage.  (*Id.*, § 2632.5, subd. (c)(1)–(3).)  Others are optional, such as the driver's type of vehicle, academic standing, and marital status — the factor at issue here.  (*Id.*, subd. (d)(1), (6), (9).)

The Commissioner further promulgated regulations identifying certain requirements for using optional rating factors like marital status.  (Cal. Code Regs., tit. 10, §§ 2632.1–2632.19.)  Insurers must file a proposed class plan — among other things, the schedule of rating factors and discounts used when

4

developing rates and premiums — with the Commissioner. (*Id*, §§ 2632.11, subd. (a), 2632.3, subd. (a).) The Commissioner then ensures " 'that the influence of each rating factor applied in an insured's premium is weighed as specified' " by the regulations. (*Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968, 992.) There is also a " 'highly technical, formulaic evaluation of the individual optional rating factors,' " including insurers using historical loss data to determine the relative risk of loss presented by the different categories within each rating factor. (*Ibid.*) The Commissioner reviews each class plan application to ensure, among other things, that the relativities are supported by the summary historical loss data provided by the insurer.

The Unruh Civil Rights Act prohibits "arbitrary, invidious or unreasonable" discrimination by business establishments and ensures full and equal access of all people to public accommodations. (*Sargoy v. Resolution Trust Corp.* (1992) 8 Cal.App.4th 1039, 1043; Civ. Code, § 51, subd. (b).) It identifies protected categories, a list that has expanded since 1959 through legislative amendments. (Civ. Code, § 51, subd. (b); *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1151–1154 (*Harris*).) Today, it provides, in relevant part, "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color . . . marital status . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Civ. Code, § 51, subd. (b).) Marital status was expressly added to the Act in 2005 by Assembly Bill No. 1400 (2005–2006 Reg. Sess.) — it was not in earlier versions of the statute. (Stats. 2005, ch. 420, § 3.) Significantly, the Act has always provided that it does not confer "any right or privilege on a person that is conditioned or limited by

5

law." (§ 51(c); *Hessians Motorcycle Club v. J.C. Flanagans* (2001) 86 Cal.App.4th 833, 837.)

The RAIN law, enacted in 1955, prohibits specified discriminatory conduct by automobile liability insurance providers. (§ 11628, subd. (a); Stats. 1955, ch. 125, § 1.) In 2008, the Legislature amended it to provide "nor shall any characteristic listed or defined in subdivision (b) or (e) of [the Unruh Civil Rights Act], including, but not limited to, language, or location within a geographic area, of itself, constitute a condition or risk for which a high rate, premium, or charge may be required of the insured for that insurance." (Stats. 2008, ch. 682, § 7; § 11628, subd. (a).)

In March 2022, Ison and other unmarried private automobile liability insurance policyholders filed a petition for writ of mandate seeking to compel the Commissioner to comply with the Unruh Civil Rights Act and RAIN law. (Code Civ. Proc., § 1085.) They alleged the regulation permitting automobile insurers to use marital status as an optional rating factor (regulation 2632.5(d)(9)) conflicts with the Act as amended in 2005 and the RAIN law as amended in 2008. Using this prohibited characteristic for ratemaking, Ison alleged, resulted in unmarried persons being charged approximately $56 to $100 more for insurance than married persons. She sought an order compelling the Commissioner to rescind or amend the regulations to eliminate marital status as a rating factor. She further sought a mandate requiring insurers who use marital status as a rating factor "to file new class plans eliminating marital status as a premium rating factor." Farmers Insurance Exchange and Mid-Century Insurance Company (Farmers) moved to intervene, claiming a substantial interest in the outcome of this proceeding because they were named defendants in a pending putative class action based

6

on their use of marital status as a rating factor.  (Code Civ. Proc., § 387; § 1861.10, subd. (a).)

The trial court granted leave to intervene and denied the petition.  It determined that the Commissioner is not subject to the Unruh Civil Rights Act and RAIN law, which only apply to insurance businesses; however, this was not dispositive.  Rather, the relevant issue was whether the Commissioner may adopt regulations that permit insurers to use rating factors that are perceived as inconsistent with those statutes.  The court determined regulation 2632.5(d)(9) could be harmonized with the Act.  It noted Proposition 103 was passed in 1988, when the Act did not list marital status as a protected characteristic.  Although voters understood the Act might be amended in the future, and intended that any amendments would apply to insurance rate regulation, the court explained section 51(c) — providing that the Act does not confer any right or privilege on a person " 'that is conditioned or limited by law' " — limited the Act's scope.  By its plain terms, the Act must "defer" to the already existing marital status regulation, which had the force of law.  Thus, the court concluded the regulation was not invalid.

## DISCUSSION

Ison contends the trial court erroneously denied her a writ of mandate to compel the Commissioner to repeal the marital status regulation.  (Code Civ. Proc., § 1085; *Alameda Health System v. Alameda County Employees' Retirement Assn.* (2024) 100 Cal.App.5th 1159, 1177 [courts may issue writs of mandate to compel public officers or agencies to perform mandatory duties].)  She argues regulation 2632.5(d)(9) — authorizing private auto insurers to use marital status as a rating factor when calculating insurance rates — is invalid because it conflicts with the plain terms of the

7

nondiscrimination provisions in sections 1861.03 and 1861.05 — respectively requiring insurers to comply with the Unruh Civil Rights Act and prohibiting the approval or allowing to remain in effect a rate that otherwise violates the provisions governing rates and ratings. (§§ 1861.03, subd. (a), 1861.05, subd. (a); see Civ. Code, § 51, subd. (b).) She further contends the regulation conflicts with the RAIN law, which she argues prohibits insurers from charging higher rates based on a person's marital status.

The Commissioner acknowledges the plain language argument but argues the regulation can be harmonized with the Unruh Civil Rights Act. According to the Commissioner, the limiting language in section 51(c) — that the Act "shall not be construed to confer any right or privilege on a person that is conditioned or limited by law" — exempts the more specific, already existing marital status regulation from the Act's stricture. (§ 51(c).) Hence, the regulation does not conflict with or exceed its authorizing statutes in the Insurance Code.

A regulation adopted by an agency pursuant to its authorizing statute is valid if it is " 'consistent and not in conflict with the statute' " and " 'reasonably necessary to effectuate the purpose of the statute.' " (*Communities for a Better Environment v. California Resources Agency* (2002) 103 Cal.App.4th 98, 108; Gov. Code, § 11342.2.) Agencies granted "substantive rulemaking power are truly 'making law,' " thus "their quasi-legislative rules have the dignity of statutes." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 10–11 (*Yamaha*).) A review of quasi-legislative regulations is generally limited to determining whether the agency action was arbitrary, capricious, entirely lacking in evidentiary support, or failed to follow required procedures. (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 11.) But when "a regulation

8

is challenged as inconsistent with the terms or intent of the authorizing statute," we independently interpret the statute while affording weight to the administrative construction. (*Ibid.*; *Western States Petroleum Assn. v. Board of Equalization* (2013) 57 Cal.4th 401, 416.) As with statutes, we independently construe initiatives "in a manner that gives effect to the voters' purpose in adopting the law," giving words their ordinary meaning, "consider[ing] the text of related provisions and the structure" of the statutory scheme, and presuming "the voters were aware of existing law." (*In re Febbo* (2020) 52 Cal.App.5th 1088, 1097; *Center for Public Interest Law v. Fair Political Practices Com.* (1989) 210 Cal.App.3d 1476, 1484.) Courts must strike down as void agency regulations that are inconsistent or in conflict with the governing statute. (*California School Bds. Assn. v. State Bd. of Education* (2010) 191 Cal.App.4th 530, 544.) Having engaged in this review, we conclude the Commissioner has the better argument.

## I.

Ison does not challenge the Commissioner's determination that marital status has a substantial relationship to the risk of loss, nor that the marital status regulation is reasonably necessary to effectuate the purpose of its authorizing statutes, sections 1861.02 and 1861.05. (*Communities for a Better Environment v. California Resources Agency, supra*, 103 Cal.App.4th at p. 108.) So we only consider whether the regulation is consistent with those provisions, and we conclude it is. (*California School Bds. Assn. v. State Bd. of Education, supra*, 191 Cal.App.4th at p. 544.) The chronology regarding the enactment of sections 1861.02 and 1861.05, promulgation of regulation 2632.5(d)(9), and the relevant amendment of the Unruh Civil Rights Act is helpful in our assessment of the regulation's validity.

Sections 1861.01 and 1861.02, enacted by Proposition 103, requires the Commissioner to approve insurance rates before their use and "delegate[s] the exclusive authority" to the Commissioner "to approve 'optional rating factors.' " (*Foundation for Taxpayer & Consumer Rights v. Garamendi* (2005) 132 Cal.App.4th 1354, 1372; §§ 1861.01, subd. (c), 1861.02.) Section 1861.05 provides that "[n]o rate shall be approved or remain in effect which is excessive, inadequate, unfairly discriminatory or otherwise in violation of this chapter" — chapter 9, "Rates and Rating and Other Organizations." (§ 1861.05, subd. (a).) Section 1861.03, included in chapter 9, expressly incorporates the Unruh Civil Rights Act — "The business of insurance shall be subject to the laws of California applicable to any other business, including but not limited to, civil rights laws (Sections 51 to 53, inclusive, of the Civil Code)." (§ 1861.03, subd. (a); *Stamps v. Superior Court* (2006) 136 Cal.App.4th 1441, 1450 [" 'By its own terms, the Unruh Civil Rights Act comprises *only* section 51' "].) Reading these provisions together, insurers may not charge — and the Commissioner may not approve or allow to remain in effect — rates that violate the Act.

Critically, when voters passed Proposition 103 — enacting sections 1861.02, 1861.03, and 1861.05 — the Unruh Civil Rights Act did not list marital status as a protected characteristic. (Stats. 1992, ch. 913, § 3; former Civ. Code, § 51, subd. (b).) Instead, it ensured full and equal accommodations no matter a person's "sex, race, color, religion, ancestry, national origin, or disability." (Stats. 1992, ch. 913, § 3; former Civ. Code, § 51, subd. (b).) Consistent with the Act, the Commissioner promulgated regulations in 1996 that prohibited insurers from adopting "any rating factor based in whole or in part upon the race, language, color, religion, national origin, ancestry, age, political affiliation, or sexual orientation of any person." (Cal. Code Regs., tit.

10, § 2632.4, subd. (a).) But the Commissioner also authorized insurers to use the marital status of the rated driver as an optional rating factor after determining that it bore a substantial relationship to the risk of loss. (Regulation 2632.5(d)(9).) As a result, insurance businesses determining rates based, in part, on marital status were not otherwise violating chapter 9 of the Insurance Code — i.e., section 1861.03, which incorporates the Act. (§ 1861.05, subd. (a).) As the parties agree, the regulation was then valid because it was consistent "with the terms or intent of the authorizing statute."[1] (*California Assn. of Psychology Providers v. Rank, supra*, 51 Cal.3d at p. 11.)

Assembly Bill No. 1400 (2005–2006 Reg. Sess.) — amending the Unruh Civil Rights Act to identify marital status as a protected characteristic — does not change this outcome. (Stats. 2005, ch. 420, § 3.) True, the Insurance Code provides that "[w]henever any reference is made to any portion of this code or of any other law of this State, such reference shall apply to all amendments and additions thereto now or hereafter made." (§ 9.) And

_____

[1] We reject Farmers's argument that regulation 2632.5(d)(9) does not conflict with the Unruh Civil Rights Act and RAIN law because neither applies to the Commissioner's rate regulation activities. Though the Commissioner is neither a "business establishment[]" nor an "admitted insurer" — to which the Act and RAIN law apply respectively — this does not address the issue here. (Civ. Code, § 51, subd. (b); § 11628, subd. (a) [prohibiting "admitted insurer[s]" from certain conduct]; *Spanish Speaking Citizens' Foundation, Inc. v. Low* (2000) 85 Cal.App.4th 1179, 1240 [Act "has no bearing on any regulation the Commissioner may adopt" because the Department of Insurance is not a " 'business establishment' "].) Rather than examining whether the Commissioner is liable for civil rights law violations, Ison challenges the Commissioner's authority to permit insurers to charge rates based on factors that allegedly violate the Act and RAIN law. (§§ 12921, subd. (a), 12926 [Commissioner shall require insurers to fully comply with all provisions of the Insurance Code].)

where a statute makes general reference to another statute, " ' "such as a reference to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time." ' " (*People v. Rojas* (2023) 15 Cal.5th 561, 570.) Here, section 1861.03 generally refers to the Act rather than invoking a specific provision of that statutory scheme — "civil rights laws (Sections 51 to 53, inclusive, of the Civil Code)." (§ 1861.03, subd. (a).) Thus, it incorporates the provisions of the Act as they existed in 1988 as well as future amendments. (*Rojas*, at p. 573.)

Construing section 1861.03 in light of the foregoing principles, Ison contends the 2005 amendment of the Unruh Civil Rights Act constrains the Commissioner's authority to maintain regulation 2632.5(d)(9) and prohibits insurers from charging insurance rates that employ marital status as an optional rating factor. In her view, any rate based in part on marital status would violate section 1861.05 — "[n]o rate shall be approved or remain in effect which is . . . otherwise in violation" of provisions governing rates and factors that affect rate changes. (§ 1861.05, subd. (a); *State Farm*, *supra*, 32 Cal.4th at p. 1041.)

But this reading fails to account for section 51(c), which was unaffected by the 2005 amendment. (Compare Stats. 2005, ch. 420, § 3 with Stats. 1992, ch. 913, § 3; *Center for Public Interest Law v. Fair Political Practices Com.*, *supra*, 210 Cal.App.3d at p. 1480 [statutes must be interpreted as a whole].) That provision "anticipates that if there is a conflict between [the Act's] provisions and those of another statute, the former" — the Act — "defers to the latter." (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1504 (*Lazar*); *Harris*, *supra*, 52 Cal.3d at p. 1155 [§ 51(c) "suggests that the Act was not

12

intended to create rights of access to public accommodations when . . . other legislation specifically limited or disclaimed those rights"], superseded on other grounds as explained in *Munson v. Del Taco, Inc*. (2009) 46 Cal.4th 661, 672.)

Lazar is instructive. There, the court rejected a challenge to rental car companies' minimum age requirement as unlawful age discrimination under the Unruh Civil Rights Act. (*Lazar*, *supra*, 69 Cal.App.4th at pp. 1499–1500.) It noted the Legislature enacted another statute authorizing rental car contracts to include minimum age requirements. (*Id*. at pp. 1502–1503.) The court reasoned the "legislative regulation of vehicle rental agreements is more specific than the general antidiscrimination provisions of the Act." (*Id*. at p. 1504.) Under those circumstances, the Act "specifically provides that it must not be construed to confer any right or privilege on a person which is otherwise conditioned or limited by law." (*Lazar*, at p. 1504.)

Regulation 2632.5(d)(9) and the Unruh Civil Rights Act can be similarly reconciled. (*State Farm*, *supra*, 32 Cal.4th at p. 1043 [examining entire statute, construing words in context, and " 'harmonizing its various parts' "].) Starting in 1996, the regulation authorized the use of marital status as an optional rating factor that bears a substantial relationship to the risk of loss. Thus, it is more specific than the "general antidiscrimination provisions" of the Act. (*Lazar*, *supra*, 69 Cal.App.4th at p. 1504.) The regulation also specifically approved treating drivers differently based on their marital status. (*Harris*, *supra*, 52 Cal.3d at p. 1155 [§ 51(c)'s "plain language suggests that the Act was not intended to create rights of access to public accommodations when . . . other legislation specifically limited or disclaimed those rights"].) In those circumstances, section 51(c) means the Act defers to the marital status regulation. (*Lazar*, at p. 1504; *Wilson v. Fair*

13

*Employment & Housing Com.* (1996) 46 Cal.App.4th 1213, 1222 ["by its own terms," the Act "is designed not to encroach upon the Insurance Code or other existing law"]; see also *Schmidt v. Superior Court* (1989) 48 Cal.3d 370, 383 [existing statute restricting housing to adults prevailed over more general provisions of the Act, which did not address age-based protections when the housing statute was enacted].) So understood, the regulation remains consistent with its authorizing statutes — sections 1861.02 and 1861.05 — rather than " 'alter[ing] or amend[ing] the governing statute or case law.' " (*Association of California Ins. Cos. v. Poizner* (2009) 180 Cal.App.4th 1029, 1045.)[2]

Ison offers several arguments disputing this conclusion; they fail to persuade.[3] First, she contends the Unruh Civil Rights Act does not confer any right or privilege on a person "that is conditioned or limited by *law*" (§ 51(c), italics added), and "law" does not include a regulation. Relying on language in *Harris* — which stated section 51(c) means the Act was not intended to create rights of access to public accommodations when "other *legislation* specifically limited or disclaimed those rights" — she insists section 51(c)'s limitation applies solely to other statutes enacted by the

---

[2] In light of this conclusion, we do not address the Commissioner's alternative argument that the marital status regulation is consistent with the Unruh Civil Rights Act or RAIN law because insurers have a legitimate business interest in setting insurance premiums based on risk.

[3] Ison argues for the first time on appeal that the marital status regulation violates Civil Code section 51.5, articulating specific types of prohibited discrimination. (Civ. Code, § 51.5, subd. (a); *Roth v. Rhodes* (1994) 25 Cal.App.4th 530, 537.) But the Unruh Civil Rights Act does not include Civil Code section 51.5 or other related statutes (*Stamps v. Superior Court*, *supra*, 136 Cal.App.4th at p. 1450), and she forfeited this argument by failing to raise the issue in the trial court (*Truck Ins. Exchange v. AMCO Ins. Co.* (2020) 56 Cal.App.5th 619, 635).

Legislature.  (*Harris*, *supra*, 52 Cal.3d at p. 1155, italics added.)  We disagree.

Harris did not purport to define "law" as it is used in section 51(c), and it is not authority for a proposition it did not consider.  (*Harris*, *supra*, 52 Cal.3d at p. 1155; *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1134.)  More importantly, we do not read the term "law" so narrowly.  Though Civil Code section 51 does not define that term, various dictionaries define it to include regulations.  (Civ. Code, § 51; *Busker v. Wabtec Corp.* (2021) 11 Cal.5th 1147, 1158–1159 [examining dictionary definitions for statutory interpretation]; Merriam-Webster's Dict. Online (2026) <https://www.merriam-webster.com/dictionary/law> [defining "law" as "a rule or mode of conduct or action that is prescribed or formally recognized as binding by a supreme controlling authority," as of July 16, 2026]; Black's Law Dict. (12th ed. 2024) [defining "law" as the "aggregate of legislation, judicial precedents, and accepted legal principles; the body of authoritative grounds of judicial and *administrative action*," italics added].)  Case law similarly defines "law" broadly, noting that quasi-legislative regulations are "an authentic form of substantive lawmaking."  (*Yamaha*, *supra*, 19 Cal.4th at p. 10.)  By passing Proposition 103, including section 1861.02 — which conferred the Commissioner with authority to adopt by regulation rating factors that have a substantial relationship to the risk of loss — voters "delegated a portion" of "their lawmaking power" to the Commissioner.  (*In re Febbo*, *supra*, 52 Cal.App.5th at p. 1097; § 1861.02, subd. (a)(4).)  The Commissioner proceeded to promulgate regulation 2632.5(d)(9), which has the dignity of a statute.  (*Yamaha*, at p. 10.)

Next, Ison argues that nothing in Proposition 103 specifically limited the application of civil rights laws, thus voters did not intend section 51(c) to

condition or limit the application of the Unruh Civil Rights Act in insurance matters. This argument ignores the presumption that voters are aware of existing, related laws. (*California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 934.) We presume voters understood that section 51(c) — a statute that existed prior to and was expressly incorporated into the Insurance Code by Proposition 103 — required the Act to defer to — rather than encroach upon — the Insurance Code or other existing laws, including validly promulgated regulations. (*Wilson v. Fair Employment & Housing Com.*, *supra*, 46 Cal.App.4th at p. 1222.)

Ison further contends the Unruh Civil Rights Act controls here because when "there is a conflict between a regulation and a statute or decisional law, it is well settled that the law controls the regulation." (*Kerollis v. Department of Motor Vehicles* (1999) 75 Cal.App.4th 1299, 1308.) But section 51(c) envisions that the Act confers no right or privilege that a law — such as the marital status regulation — conditions or limits; as we have explained, the two can be harmonized. Moreover, "it is no less settled that when a special and a general statute are in conflict, the former controls" — the special act is an exception to the general statute. (*Agricultural Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392, 420.) Likewise, the Legislature can also authorize an administrative agency to "depart from its existing dispositions on a given topic" "on its behalf." (*Ibid*.) Thus, "in cases of conflict," a "regulation validly adopted pursuant to a delegation of authority under a special statute likewise prevails over the terms of a general statute." (*Ibid*.)

"This rule of construction is reiterated and specifically made applicable" here by section 1860.1 — "No act done, action taken . . . pursuant to the authority conferred by [chapter 9, governing Rates and Rating and Other Organizations] shall constitute a violation of . . . any other law of this State

heretofore or hereafter enacted which does not specifically refer to insurance." (*Agricultural Labor Relations Bd. v. Superior Court*, *supra*, 16 Cal.3d at p. 420; § 1860.1.) As discussed above, the marital status regulation was validly adopted pursuant to sections 1861.02 and 1861.05 before marital status was added to the Unruh Civil Rights Act. Nothing in the language of the Act or Assembly Bill No. 1400 indicates any intent to alter the process or standards for setting insurance rates or to work any other effects on insurance. (Stats. 2005, ch. 420, § 3, p. 3513 ["the Legislature intends to clarify the existing law, rather than to change the law"].) Thus, the specific regulation authorizing reliance on the marital status of a rated driver for insurance rating purposes prevails over the general Act.

Next, citing the Disabled Persons Act's distinction between laws and regulations — "Individuals with disabilities shall be entitled to full and equal access, as other members of the general public . . . subject only to the conditions and limitations established by law, *or state or federal regulation*" — Ison argues the Legislature knew how to employ precise language to limit rights and privileges by a regulation but consciously omitted it in section 51(c). (Civ. Code, § 54.1, subd. (a)(1), italics added.) We acknowledge that " 'when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded.' " (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 725.)

But that principle has no application here. It applies "only when the Legislature has intentionally changed or excluded a term by design" and "when different terms are used in parts of the *same* statutory scheme that they are presumed to have different meanings." (*Smith v. Rae-Venter Law Group* (2002) 29 Cal.4th 345, 364, superseded on other grounds by statute as noted in *Eicher v. Advanced Business Integrators, Inc.* (2007) 151 Cal.App.4th

17

1363, 1384.) Leaving aside Ison's failure to identify any evidence the Legislature specifically intended to exclude "regulations" from section 51(c)'s use of the term "law," section 54.1 is located in a different part of the Civil Code — part 2.5, titled "Blind and Other Physically Disabled Persons." (*Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 126 [requiring evidence Legislature intended expressio unius application " ' "lest it prevail as a rule of construction despite the reason for and the spirit of the enactment" ' "].) Section 51(c) appears in part 2, titled "Personal Rights." It "does not appear that the Legislature's failure to use identical language" in the Unruh Civil Rights Act "was either intentional or meaningful." (*Smith*, at p. 364.)

Our reading of section 51(c) and regulation 2362.5(d)(9) also does not contravene *State Farm*, contrary to Ison's assertions.[4] There, a regulation required insurance companies to publicly disclose demographic information regarding its business organized by ZIP code. (*State Farm*, *supra*, 32 Cal.4th at pp. 1036–1038 [interpreting § 1861.07 and Cal. Code Regs., tit. 10, § 2646.6, subd. (c)].) An insurance business argued the regulation exceeded the Commissioner's authority under Proposition 103 — a statutory scheme it argued primarily addressed rate regulation. (*State Farm*, at pp. 1039–1040.) The Supreme Court disagreed, noting that Proposition 103 "subjects the business of insurance to laws prohibiting discriminatory and unfair business practices." (*State Farm*, at p. 1041.) In addition to rate regulation, it

---

[4] We reject Ison's request for judicial notice of the Commissioner's brief filed in *State Farm*. (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a).) She did not present it to the trial court in the first instance, and in any event, the brief has no bearing on the issues here. (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325–326 [declining to take judicial notice of records where proponent "puts forth no reason for its failure" to make request in the trial court]; *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063.)

18

"addresses the underlying factors that may impermissibly affect rates charged by insurers and lead to insurance that is unfair, unavailable, and unaffordable." (*Id.* at pp. 1041–1042.) Thus, the Commissioner had the authority to gather the requested information to determine whether the insurance industry underserved certain communities. (*Id.* at p. 1042.) We agree with *State Farm's* uncontroversial observation that insurance businesses are subject to nondiscrimination laws. But we cannot discern anything in the decision that addresses the relationship between the Commissioner's optional rating factor regulations and the Unruh Civil Rights Act, the relevant issue here. (*State Farm*, at p. 1041.)

In sum, regulation 2632.5(d)(9) is not invalid under the Unruh Civil Rights Act, and the trial court properly denied the writ seeking its rescission.

## II.

Regulation 2632.5(d)(9) also does not conflict with the RAIN law. (§ 11628, subd. (a).) Section 11628, as amended by Assembly Bill No. 2654 (2007–2008 Reg. Sess.), provides that "any characteristic listed or defined" in the Unruh Civil Rights Act shall not "*of itself* constitute a condition or risk for which a higher rate, premium, or charge may be required of the insured for that insurance." (Stats. 2008, ch. 682, § 7; § 11628, subd. (a), italics added.) To the extent this provision may be read to categorically prohibit automobile insurers from using marital status as a basis for charging higher insurance rates, section 11628's legislative history expressly disavows any intent to alter the Commissioner's optional rating factor regulations. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 ["the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is

consistent with other provisions of the statute"]; § 11628, subd. (a); Civ. Code, § 51, subd. (b).)

An express statement of legislative intent by Assembly Bill No. 2654's author printed in the Assembly Journal addresses the apparent conflict between section 11628's plain language and the Legislature's purpose. (Assemblymember John Laird, letter to Assembly Chief Clerk E. Dotson Wilson (Sept. 15, 2008) 6 Assem. J. (2007–2008 Reg. Sess.) p. 7255; *Stokes v. Baker* (2019) 35 Cal.App.5th 946, 964, fn. 5 [using statement by the sponsoring legislator to ascertain legislative intent if the statement has been approved and " 'evidences the understanding of the Legislature' and not simply the particular legislator's personal views"].)  He explained that section 7 of the bill prohibits discrimination in casualty insurance, "including in the use and establishment of rating factors," while also acknowledging Proposition 103 authorized the Commissioner to establish optional rating factors through regulation.  (Assemblymember John Laird, letter to Assembly Chief Clerk E. Dotson Wilson, *supra*, 6 Assem. J. (2007–2008 Reg. Sess.) p. 7256.)  The amendment, he emphasized, was not intended "to amend Prop. 103 with respect to these rating factors." (*Ibid*.)  And he acknowledged that altering Proposition 103's rating factor statutes would require a two-thirds majority vote, and "regulatory action by the Insurance Commissioner would be necessary to change the optional rating factors." (*Ibid*.)

The letter does not reflect that the Legislature intended to strip the Commissioner of authority to maintain the marital status regulation, contrary to Ison's assertions.  It simply assuaged concerns about how "[Assembly Bill No.] 2654 might affect rating factors used by these insurers" by reiterating that only the Commissioner could change any optional rating factors "in light of the fact that Proposition 103 established certain rating

20

factors in law and also authorized the State Insurance Commissioner to establish additional optional rating factors through regulation." (Assemblyperson John Laird, letter to Assembly Chief Clerk E. Dotson Wilson, *supra*, 6 Assem. J. (2007–2008 Reg. Sess.) p. 7256.) That the Assembly voted to print this statement in the Assembly Journal underscores the Legislature's clear intent that the amendment of the RAIN law would have no effect on the marital status regulation, contrary to a literal reading of the statutes. (*Stokes v. Baker, supra*, 35 Cal.App.5th at p. 965; *Bell v. Department of Motor Vehicles* (1992) 11 Cal.App.4th 304, 312 [disregarding literal language of an enactment to fulfill the Legislature's intent].) The RAIN law amendment does not supply a basis to invalidate the marital status regulation.

III.

We reject Ison's remaining arguments. First, she conclusively states the marital status regulation is an unconstitutional delegation of legislative authority because it permits the Commissioner to determine the applicability of civil rights law. Not so. The Legislature may properly delegate " 'some quasi-legislative or rulemaking authority.' " (*Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.* (2017) 3 Cal.5th 1118, 1146.) An unconstitutional abdication of legislative power occurs " 'only when a legislative body (1) leaves the resolution of fundamental policy issues to others or (2) fails to provide adequate direction for the implementation of that policy.' " (*Ibid*.) Assuming without deciding these principles apply to an initiative passed by voters, the delegation was not unconstitutional.

Voters made the fundamental policy determination that the Commissioner must review and approve rate increases for various types of insurance before they can take effect. (Ballot Pamp., Gen. Elec. (Nov. 8,

21

1988) Prop. 103, analysis by the Legislative Analyst, p. 98.) Section 1861.02 delegated to the Commissioner the authority to adopt optional automobile insurance rating factors that have a substantial relationship to the risk of loss and required the Commissioner to "adopt regulations implementing this section." (Ballot Pamp., Gen. Elec. (Nov. 8, 1988) text of Prop. 103, § 3, p. 99; § 1861.02, subd. (a)(4).) Thus, the voters declared a policy, created a standard, and authorized the Commissioner to determine which optional rating factors would be appropriate. (*Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.*, *supra*, 3 Cal.5th at p. 1148.) The marital status regulation, as discussed above, complies with the Unruh Civil Rights Act. The regulation does not violate the nondelegation doctrine. (*Gerawan*, at p. 1148.)

Second, a June 2022 bulletin concerning "allegations of racial bias and discrimination" issued by the Commissioner, which reminded the insurance industry that the Unruh Civil Rights Act protects against discrimination based on protected characteristics (including marital status) and that insurers must ensure full compliance with all laws prohibiting discrimination in ratemaking, does not impact our analysis. Contrary to Ison, we do not interpret this bulletin as an agency interpretation relevant to the issues here. Even if it were, "[c]onsidered alone and apart from the context and circumstances that produce them, agency interpretations are not binding or necessarily even authoritative." (*Yamaha*, *supra*, 19 Cal.4th at p. 8.) And deferring to the purported interpretation here would in any event be unnecessary as we reach our conclusions based on our independent interpretation of the law. (*Ibid.* [" 'The standard for judicial review of agency interpretation of law is the *independent judgment* of the court, giving

22

*deference* to the determination of the agency *appropriate* to the circumstances of the agency action' "].)

We express no view as to whether, or how, section 51(c) may be applied in a civil lawsuit seeking to hold a business establishment liable under the Unruh Civil Rights Act for conduct authorized by a regulation. (Cf. *Davis v. CSAA Ins. Exchange* (2025) 114 Cal.App.5th 121, 135.)

## DISPOSITION

The judgment is affirmed. The Commissioner and Farmers are entitled to recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

_____

RODRÍGUEZ, J.

I CONCUR:

_____

FUJISAKI, J.

A170267; *Ison v. Lara*

**TUCHER, J., Dissenting.**

I agree with the majority on three fundamental points: First, Proposition 103 requires the " 'business of insurance' " to comply with the State's " 'civil rights laws,' " including all "future amendments" to those laws. (Maj. opn. *ante*, at pp. 10–12, quoting Ins. Code, § 1861.03, subd. (a) (§ 1861.03(a)).) Second, the Unruh Civil Rights Act (Civ. Code, § 51 et seq.; the Act or the Unruh Act) was amended after the passage of Proposition 103 expressly to prohibit discrimination based on marital status. (Maj. opn. *ante*, at p. 2, citing Stats. 2005, ch. 420, § 3.) And third, the Commissioner of the Department of Insurance (Commissioner), who is tasked under Proposition 103 with approving automobile insurance rates, "may not approve . . . rates that violate the Act." (Maj. opn. *ante*, at p. 10, discussing Ins. Code, §§ 1861.03(a), 1861.05; all unspecified statutory references are to this code.)

From these three points, I deduce two more. Because insurers must comply with future amendments to the Unruh Act and the Act was amended to list marital status as a protected class in 2005, automobile insurers may no longer discriminate on the basis of marital status. And for the same reason, the Commissioner may no longer approve rates that allow such discrimination.

On its face, the regulation appellants challenge allows insurers to charge unmarried drivers more than married drivers. (See Cal. Code of Regs., tit. 10, § 2632.5, subd. (d)(9) (Regulation 2632.5(d)(9) or marital status regulation); all unspecified references to regulations are to Cal. Code of Regs., tit. 10.) For that reason, it cannot stand: It purports to authorize insurers to adopt rates that discriminate on a basis that the Unruh Act now prohibits. The marital status regulation is thus no longer consistent with its own

1

authoring legislation, which compels insurers to comply with the Act *and future amendments to the Act.* (§ 1861.03(a).)

The marital status regulation also conflicts with a second civil rights law, the Rosenthal Auto Insurance Nondiscrimination Law (§ 11628 (RAIN law)). As amended in 2008, the RAIN law forbids insurers to charge higher automobile insurance rates based on "any characteristic listed" in the Unruh Act. (§ 11628.) My colleagues appear to recognize that the plain language of this provision prohibits automobile insurers from charging unmarried drivers more for automobile insurance than married drivers. (Maj. opn. *ante*, at pp. 19–21.) Unlike my colleagues, I do not read legislative history to negate the ordinary meaning of this statutory language.

Where a regulation is "void because of inconsistency or conflict with the governing statute, a court has a duty to strike [it] down." (*California School Bds. Assn. v. State Bd. of Education* (2010) 191 Cal.App.4th 530, 544.) I must accordingly dissent.

## BACKGROUND

The statutory and procedural background of this dispute is ably set forth in the majority's opinion, but because chronology is dispositive in the majority's analysis, additional historical perspective is useful. After setting forth relevant provisions of Proposition 103, the Unruh Act, and the RAIN law, I summarize the regulatory activity that led to the adoption of the marital status regulation.

### A.

The Insurance Rate Reduction and Reform Act, commonly referred to as Proposition 103, was approved by California voters in November 1988, and its provisions were added to Chapter 9 of the Insurance Code. (*Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1247–1248.) These

2

provisions include section 1861.02, which sets forth mandatory automobile insurance rating factors and authorizes the Commissioner to adopt regulations allowing optional rating factors.

Proposition 103 also added two code sections that constrain how the Commissioner exercises this regulatory authority. Section 1861.03(a) provides, the "business of insurance shall be subject to the laws of California applicable to any other business, including, but not limited to, civil rights laws (Section 51 to 53, inclusive, of the Civil Code) . . . ." And section 1861.05 provides, "No rate shall be approved or remain in effect which is excessive, inadequate, unfairly discriminatory or otherwise in violation of this chapter." (§ 1861.05, subd. (a) (§ 1861.05(a)).) These provisions appear in the same chapter and work together to prohibit the Commissioner from approving any rate that violates "the civil rights laws" of California. (§§ 1861.03(a), 1861.05(a).)

**B.**

Chief among our state's civil rights laws is the Unruh Act. The Unruh Act enumerates categories of prohibited discrimination in a list that has expanded since 1959 through repeated legislative amendment. (Civ. Code, § 51, subd. (b) (§ 51(b)); see *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1151–1154 (*Harris*), partially superseded on other ground, *Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 664–665.) Currently, the Act provides that all persons within this state "are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to . . . full and equal accommodations . . . in all business establishments of every kind

3

whatsoever." (§ 51(b).) Marital status was added to this list in 2005. (Stats. 2005, ch. 420, § 3.)

The Unruh Act provides even broader protection against discrimination than its plain language would suggest, for courts have long held that its enumerated categories are illustrative, rather than restrictive. (See, e.g., *Liapes v. Facebook, Inc.* (2023) 95 Cal.App.5th 910, 919–920.) Unenumerated types of discrimination may also violate the Act if the challenged conduct targets personal characteristics similar to the classifications enumerated in the Act. (*Harris*, *supra*, 52 Cal.3d at pp. 1148, 1152–1156.) Thus, courts have held that the Act "prohibits arbitrary discrimination" on the basis of age, although the Act nowhere mentions age. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1502 (*Lazar*); see also *Liapes*, at p. 920.) And even before the Legislature amended the Unruh Act expressly to prohibit discrimination based on marital status, our high court "conclude[d] that marital status claims are cognizable under the [Act]." (*Koebke v. Bernardo Heights Country Club* (2005) 36 Cal.4th 824, 831 (*Koebke*).) *Koebke* held that "a business that extends benefits to spouses it denies to registered domestic partners engages in impermissible marital status discrimination" under the Act. (*Ibid*.)

Despite its broad reach, the Unruh Act has some significant limitations. Most relevant for our purposes, it does not confer "any right or privilege on a person that is conditioned or limited by law." (Civ. Code, § 51, subd. (c) (§ 51(c).) Interpreting this provision, courts have held that when there is a conflict between provisions of the Act and those of another statute, "the former defers to the latter." (*Lazar*, *supra*, 69 Cal.App.4th at p. 1504.)

Unruh Act protections are incorporated by reference into statutes that directly regulate the automobile insurance industry. As we have seen, Proposition 103 expressly subjects insurers to the Unruh Act. (§ 1861.03(a).)

4

Also, the RAIN law as amended in 2008 incorporates the Unruh Act's express antidiscrimination protections. The RAIN law prohibits automobile liability insurers from charging higher rates on the basis of "any characteristic listed" in Civil Code section 51(b). (Stats. 2008, ch. 682, § 7 (Assem. Bill 2654); Ins. Code, § 11628, subd. (a).)

## C.

Several former Insurance Commissioners struggled to devise regulations implementing Proposition 103 before the Department of Insurance (Department) adopted permanent regulations in 1996. (*Spanish Speaking Citizens' Foundation, Inc. v. Low* (2000) 85 Cal.App.4th 1179, 1185, 1194–1200 (*Spanish Speaking Citizens*').) Beginning in 1989, the Department approved a series of emergency and interim regulations, some of which identified the marital status of the rated driver as a permissible factor for determining insurance rates and premiums, while others did not.

In 1994, the Department approved an interim regulation proposed by former Commissioner Garamendi that expressly prohibited insurers from adopting any rating factor based on marital status. Garamendi acknowledged that marital status and two other classifications included on his list of prohibited factors—age and gender—had been commonly used by insurers and previously deemed permissible. But he found them "undesirable" as rating factors because they are individual characteristics not within the driver's control. Garamendi also found that, to the extent the Unruh Act did not bar use of these factors—it listed neither age nor marital status in 1994—both factors were nonetheless inconsistent with the purpose of Proposition 103.

In 1996, the Department under former Commissioner Quackenbush adopted permanent regulations based on a different view. Commissioner

5

Quackenbush announced that the marital status of the rated driver *was* a permissible rating factor, offering this explanation for parting from his predecessor: "The Commissioner has determined that the use of marital status is not unfairly discriminatory within the meaning of the Unruh Civil Rights Act. Therefore, the prohibition of the use of marital status as a rating factor has been removed from the proposed regulation." It is worth noting that the Commissioner who approved the marital status regulation did so only after concluding it was "not unfairly discriminatory" under the Unruh Act. This view was plausible in 1996, when the only appellate decision to have considered whether discrimination based on marital status was cognizable under the Unruh Act concluded it was not. (See *Beaty v. Truck Ins. Exchange* (1992) 6 Cal.App.4th 1455, discussed in *Koebke, supra*, 36 Cal.4th at p. 843.) But that changed in 2005, when the California Supreme Court decided *Koebke* and then the Legislature amended the Unruh Act expressly to include marital status discrimination.

Collectively, the regulations adopted in 1996 prescribe a process for setting automobile insurance rates. (Regulation 2632.1 et seq.) Each insurer must submit a case plan specifying its rating factors (i.e., factors that affect rates) and how the insurer plans to use them in calculating rates. (Regulations 2632.2, subd. (a), 2632.3, 2632.5, subd. (a).) Insurers are prohibited from using any rating factor that is not set forth in the regulations, or that does not bear a substantial relationship to loss. (Regulation 2632.4.) The regulations also prohibit insurers from adopting any rating factor that is based in whole or in part "on the race, language, color, religion, national origin, ancestry, age, political affiliation, or sexual orientation of any person" (Regulation 2632.4, subd. (a)), a list that includes some characteristics *not* enumerated in the Unruh Act (e.g., age, political

6

affiliation) and fails to include some that are so enumerated, including "sex" and "marital status." (Civ. Code, § 51(b).)

Regulation 2632.5, subdivision (d) provides that, in addition to the mandatory rating factors set forth in section 1861.02, subdivisions (a)(1) through (a)(3), insurers may set rates based on "optional rating factors" listed in the regulation, including the marital status of the rated driver (Regulation 2632.5(d)(9)). A decade after the Commissioner approved this regulation, the Legislature amended the Unruh Act to add marital status to its enumerated categories of prohibited discrimination. Yet, the Commissioner never rescinded the marital status regulation, even when amending the regulations to eliminate gender as an optional rating factor.[1] This inaction precipitated the parties' dispute.

## DISCUSSION

Appellants and amici contend the Commissioner must be compelled to set aside Regulation 2632.5(d)(9) because he does not have authority, when promulgating and maintaining rate regulations, to limit application of the state's civil rights laws.[2] I agree. Although the Department's construction of

---

[1] As to both gender and marital status, the 1996 regulations reverted to allowing insurers to use these as optional rating factors, but in 2018 the Commissioner reversed course again as to gender, eliminating it as an optional rating factor. (See Cal. Reg. Notice Register 2018, No. 42-Z, pp. 1844–1849; Cal. Reg. Notice Register 2019, No. 2-Z, p. 74.)

[2] Appellants are supported by two nonprofit organizations that have filed amicus curiae briefs. As self-described, the Consumer Federation of America is an association of organizations that advocate to make insurance affordable and accessible for all consumers, and Consumer Watchdog is a California charitable organization committed to defending the consumer protection provisions of Proposition 103 and protecting Californians from unfair or abusive insurance rates and practices.

7

an Insurance Code provision deserves respect, statutory interpretation presents a "question of law solely within the province of this court." (*Mackey v. Bristol West Ins. Service of Cal., Inc.* (2003) 105 Cal.App.4th 1247, 1263.) It is a " judicial function" to determine whether a regulation " ' "is 'within the scope of the authority conferred.' " ' " (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 11.) For the reasons explained below, I conclude the marital status regulation is not within the authority Proposition 103 confers on the Commissioner because it is not consistent with our civil rights laws.

The argument proceeds in four parts. Addressing contentions of the Commissioner and intervenors Farmers Insurance Exchange and Mid-Century Insurance Company (Farmers), I first conclude the Commissioner's rulemaking authority is subject to the Unruh Act and the RAIN law in their current forms. Part II then explains how the Unruh Act prohibits the price discrimination based on marital status that Regulation 2632.5(d)(9) purports to allow. Part III rejects the argument the majority finds dispositive, that in the face of this conflict, section 51(c) requires the Unruh Act to " 'defer' " to the marital status regulation. (See maj. opn. *ante*, at pp. 6, 13.) And Part IV provides a separate but related reason why the marital status regulation is void—because it conflicts with the RAIN law.

## I.

Like the majority, I conclude that Proposition 103 requires insurers to comply with the state's civil rights laws as they have been subsequently amended, and that the *current* versions of the Unruh Act and the RAIN law constrain the Commissioner's authority to approve rates. (Maj. opn. *ante*, at pp. 10–11.)

8

We have seen that Proposition 103 added to the Insurance Code two provisions that together prohibit the Commissioner from approving automobile insurance rates that violate our civil rights laws. (See §§ 1861.03(a), 1861.05(a).) Respondents seek to blunt the force of this constraint, contending that to the extent section 1861.03(a) limits the Commissioner's regulatory authority,[3] it incorporates an older version of the Unruh Act that did not prohibit marital status discrimination. According to this argument, (1) the 2005 Unruh Act amendment cannot be construed to restrict the Commissioner's ratemaking authority unless it also amended Proposition 103, and (2) the 2005 Unruh Act amendment did not pass the Legislature by the two-thirds vote necessary for amending Proposition 103. (See Ballot Pamp., Gen. Elec. (Nov. 8, 1988) text of Prop. 103, § 8, p. 144.) This argument fails on its first prong because section 1861.03(a) codifies the intent of the voters who passed Proposition 103 to incorporate future amendments to the Unruh Act. (See *People v. Rojas* (2023) 15 Cal.5th 561, 568, 571, 574 (*Rojas*).) Thus, Proposition 103 did not have to be amended for the current version of the Unruh Act to apply. And by parity of reasoning, it is also the current version of the RAIN law that applies.

In *Rojas*, *supra*, 15 Cal.5th at page 566, our Supreme Court found legislation that changed the criminal law on gang enhancements did not constitute an unlawful legislative amendment of the Gang Violence and

---

[3] Like the majority, I reject Farmers' assertion that the Commissioner's rate regulation activities are not subject to the Unruh Act or the RAIN law, though the Unruh Act applies to "business establishments" (Civ. Code, § 51(b)) and the RAIN law to "admitted insurer[s]" (Ins. Code, § 11628, subd. (a)). (See Maj. opn. *ante*, at p. 11, fn. 1.) Appellants do not seek to hold the Commissioner liable for violating civil rights laws himself; they seek to compel him to enforce those laws among insurers. (See §§ 1861.03(a), 12921, subd. (a), 12926.)

Juvenile Crime Prevention Act of 1998 (Proposition 21).  *Rojas* is pertinent because the court there interpreted a provision in an initiative law that incorporates another law by reference.  The *Rojas* court confirmed that the same principles governing statutory construction apply to interpretation of an initiative statute, and it then applied a cannon that distinguishes a specific reference from a general reference.  (*Rojas*, at pp. 568, 571.)  When an initiative statute adopts by " ' "specific reference" ' " the provisions of another statute, those provisions "are incorporated in the form in which they exist at the time of the reference and not as subsequently modified."  (*Id.* at pp. 570–571.)  But when the reference is "general instead of specific, such as a reference to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time."  (*Id.* at p. 570.)

Applying *Rojas*, the trial court correctly concluded Insurance Code section 1861.03(a) constitutes a general reference that incorporates the Unruh Act.  Section 1861.03(a) contains unambiguous language incorporating the "civil rights laws," including but not limited to the Unruh Act (§ 1861.03(a)), thus codifying the voters' intent to incorporate future amendments to the Act.  (See *Rojas*, *supra*, 15 Cal.5th at p. 571.)  On appeal, respondents ignore *Rojas*, but they cannot avoid the fact that Insurance Code section 1861.03(a) incorporates the Unruh Act by general reference, meaning that Proposition 103 did not "lock in" the Act's protections as they existed in 1996.  (*Rojas*, *supra*, 15 Cal.5th at p. 573.)  And, as the majority points out, the same result would obtain under section 9 of the Insurance Code.  (Maj. opn. *ante*, at p. 11, discussing Ins. Code, § 9 ["Whenever any reference is

made to . . . any other law of this State, such reference shall apply to all amendments and additions thereto now or hereafter made"].)

Because section 1861.03(a) incorporates the civil rights laws by general reference, I am unmoved by the Commissioner's argument that the Legislature did not intend for the 2005 Unruh Act amendment to amend Proposition 103. The intent that matters is that of the electorate that adopted Proposition 103. The voters who added section 1861.03(a) to the Insurance Code intended to incorporate future amendments to the civil rights laws, so no amendment to Proposition 103 was required for the current version of the Unruh Act to govern. (See *Kobzoff v. Los Angeles County Harbor/UCLA Medical Center* (1998) 19 Cal.4th 851, 861 ["If the plain language of a statute is unambiguous, no court need, or should, go beyond that pure expression of legislative intent"].) The Commissioner's ratemaking authority is subject to the Unruh Act and the RAIN law in their current forms. And this authority does not permit the Commissioner to adopt an optional rating factor that conflicts with these civil rights laws.

## II.

The Commissioner contends that the marital status regulation does not conflict with the Unruh Act or the RAIN law because the Act "prohibits only 'arbitrary' discrimination," whereas insurers have "a 'legitimate business reason' for discriminating" between married and unmarried drivers. (Citing *In re Cox* (1970) 3 Cal.3d 205, 212 (*Cox*); *Koebke, supra*, 36 Cal.4th at pp. 851–852; *Koire v. Metro Car Wash* (1985) 40 Cal.3d 24, 30 (*Koire*).) The Commissioner does not dispute that the Act's prohibitions extend to discriminatory pricing policies. (*Cox*, at p. 212; *Javorsky v. Western Athletic Clubs, Inc.* (2015) 242 Cal.App.4th 1386, 1394; *Chabner v. United of Omaha Life Ins. Co.* (9th Cir. 2000) 225 F.3d 1042, 1050 (*Chabner*).) Where the

11

Commissioner and I part ways is that he asserts price discrimination based on marital status does not conflict with the Act if insurers have actuarial support for their rate differentials. (Citing *Spanish Speaking Citizens'*, *supra*, 85 Cal.App.4th at p. 1240.) I view this as a misreading of the Unruh Act.

The most obvious problem with the Commissioner's analysis is that it is untethered to the Unruh Act's statutory language. The Act expressly prohibits using specified classifications to deny persons within the state "free and equal" access to "full and equal accommodations." (§ 51(b).) There is no hedging in the statutory text, no suggestion that the statute forbids only arbitrary discrimination, and no textual hook for the Commissioner's theory that discriminatory practices are acceptable if they have actuarial support or business justification. (See *Pizarro v. Lamb's Players Theatre* (2006) 135 Cal.App.4th 1171, 1175 [Unruh Act establishes a "general prohibition" as to all discrimination or preferential treatment based on categories expressly enumerated].)

The Commissioner's analysis is also without precedent. He cites *no* case that holds the Unruh Act authorizes a business to discriminate on the basis of an enumerated classification, so long as the business can claim a legitimate business reason for doing so.

Indeed, the Commissioner's argument runs counter to Supreme Court precedent applying the Unruh Act to prohibit discrimination that appears to have been economically rational. In *Koire*, *supra*, 40 Cal.3d at p. 27, a male plaintiff alleged the defendant businesses—a car wash and a nightclub—violated the Unruh Act by offering discounts to female customers. After the trial court granted judgment for defendant businesses, finding that the sex-based price discounts did not violate the Act, the *Koire* court reversed. (*Koire*,

12

at pp. 28, 39.)  It held that the language of the Unruh Act is unambiguous, is to be broadly construed, and "clearly covers discrimination based on sex," as that classification is enumerated in the Act.  (*Koire*, at p. 28.)  The court rejected defense arguments that sex-based price discounts were "not arbitrary because they [were] supported by 'substantial business and social purposes.' "  (*Id*. at p. 32.)  Although a weekly " 'Ladies' Night' " was the highest-grossing night at the nightclub, the sex-based discounts did not become "permissible" simply "because they [were] profitable."  (*Ibid*.; *id*. at p. 39, fn. 19.)  The defendants' allegedly rational economic motives did not justify the discounts.  (*Id*. at pp. 32–33).  Squarely rejecting arguments that sought to justify price discrimination involving an enumerated classification, the *Koire* court found, in essence, that discounts based on an enumerated characteristic constituted arbitrary discrimination as a matter of law.  (*Id*. at p. 35 ["This sort of class-based generalization as a justification for differential treatment is precisely the type of practice prohibited by the Unruh Act"].)

The Commissioner offers two responses to the clear lesson of *Koire*. First, he points to language in *Koire* acknowledging that there may "be instances where public policy warrants differential treatment for men and women"; for example, "the constitutional right to personal privacy" may justify sex-segregated restroom facilities.  (*Koire, supra*, 40 Cal.3d at p. 38.) But in our case, the Commissioner offers no comparable public policy warranting differential treatment for married and unmarried drivers.  A private insurer's "legitimate business interest," which the Commissioner offers up as his justification instead, is not comparable to a *public* interest or policy backed by constitutional or statutory mandates.  (See *id*. at pp. 32, 38– 39.)  If it were, the *Koire* court would have been more impressed by the economic success of " 'Ladies' Night.' "  Instead, the court rejected the

nightclub's economic justifications, announcing that, "[a]bsent a compelling social policy supporting sex-based price differentials, such discounts violate the Act." (*Id*. at pp. 38 & 39, fn. 19.)

The Commissioner's second, and less direct, response to *Koire* is to shift the focus to other cases, in which the court *was* persuaded by a private entity's legitimate business interests. But in so doing, the Commissioner obscures the distinction between characteristics that are enumerated in the Unruh Act and those that are not. A large body of California law reflects the courts' efforts to "define the contours of what constitutes unreasonable, arbitrary or invidious discrimination under the [Act] in the context of *un*enumerated characteristics." (*Civil Rights Dept. v. Cathy's Creations, Inc.* (2025) 109 Cal.App.5th 204, 267, italics added; see also *Harris, supra*, 52 Cal.3d at pp. 1148, 1150–1156.) "Within these unenumerated categories, California courts have concluded that some distinctions in treatment— particularly those that promote the welfare of children and seniors—are not arbitrary or unreasonable because they are based on public policy objectives, typically explicitly stated by the Legislature in statutory enactments." (*Civil Rights Dept.*, at p. 266.) But, as mentioned, the Commissioner cites no case that sees fit to analyze whether discrimination on the basis of an enumerated characteristic is also arbitrary or unreasonable.

The Commissioner relies on *Cox, supra*, 3 Cal.3d 205, a habeas proceeding challenging the validity of a municipal ordinance prohibiting patrons from remaining on the premises of a shopping center after the proprietor ordered them to leave. The petitioner was a customer whose male companion "wore long hair and dressed in an unconventional manner," which prompted mall security officers to eject the pair. (*Id*. at p. 210.) The court found that because the municipal ordinance incorporated the protections of

14

the Unruh Act, it did not sanction arbitrary expulsion of a customer. (*Cox*, at pp. 209, 211–212.) Explaining that the particular bases of discrimination listed in the Act are "illustrative rather than restrictive," the *Cox* court acknowledged that the case involved no classification listed in the Act but held that the Act prohibits arbitrary conduct beyond the types of discrimination that are expressly barred. (*Cox*, at p. 216; see also *Harris*, *supra*, 52 Cal.3d at pp. 1158–1160 [setting forth test for unenumerated types of discrimination].) The *Cox* court found that the Act generally prohibits arbitrary discrimination, but it did not hold that the Act prohibits *only* arbitrary discrimination.

The Commissioner also relies on *Koebke*, *supra*, 36 Cal.4th at pp. 831–832, in which a couple who were registered domestic partners alleged that a country club violated the Unruh Act by discriminating against them on the basis of their marital status and sexual orientation. *Koebke* was decided *before* the Legislature amended the Act to add marital status and sexual orientation to the list of prohibited classifications (*Koebke*, at pp. 839, 848–850), so the *Koebke* court employed the test for analyzing whether to extend the reach of the Act to unenumerated discrimination. It was in this context that the court considered whether a legitimate business interest justified the challenged policy. (*Id*. at pp. 841–842, 846; see *Harris*, *supra*, 52 Cal.3d at p. 1160.) Ultimately, the court held that the Act bars businesses from extending to married couples benefits that are not also extended to unmarried couples who are registered as domestic partners. (*Koebke*, at pp. 842, 850–851.) But as to unmarried individuals and couples not so registered, the court found discrimination would "be permissible if justified by " 'legitimate business interests.' " (*Id*. at pp. 851; see also *id*. at p. 831.) The Commissioner ignores that the court invoked legitimate business

15

interests only in analyzing what were then unenumerated types of discrimination.  Since marital status is now an expressly prohibited classification, *Koebke* is of limited relevance here.

Finally, the Commissioner relies on *Spanish Speaking Citizens'*, which rejected a multifaceted challenge to a regulation addressing rating factors in the pricing of automobile insurance.  (*Spanish Speaking Citizens'*, *supra*, 85 Cal.App.4th at p. 1186.)  There, an amicus brief had argued that a regulation allowing insurers to group drivers by zip code, charging different rates based on "territorial factors," violated the Unruh Act.  (*Spanish Speaking Citizens'*, at p. 1240.)  The argument failed for multiple reasons, the court explained, including that the territorial factors were "substantially related to the risk of loss" so insurers had "a legitimate business reason for [their] use."  (*Ibid.*, citing Ins. Code, § 1861.02, subd. (a)(4).)  This precedent does not help the Commissioner here because the location of a person's home is not a characteristic protected under the Unruh Act.  Thus, *Spanish Speaking Citizens'* provides no authority for an exception to the express commands of the Unruh Act when a rating factor is "substantially related to the risk of loss."  (*Spanish Speaking Citizens'*, at p. 1240.)  Such actuarial integrity is a separate requirement each optional rating factor must meet (§ 1861.02, subd. (a)(4)), not an excuse for conduct that violates the Act.

In sum, statutory text and case law establish that the Unruh Act simply prohibits price discrimination based on marital status, which is what Regulation 2632.5(d)(9) purports to allow.

## III.

The majority attempts to reconcile this conflict by subordinating the clear directive of the Unruh Act to the contrary rule of the Commissioner's marital status regulation.  This approach has it backwards.  I acknowledge

that the Act does not "confer any right or privilege on a person that is conditioned or limited by law" (§ 51(c)), and that this provision causes the Unruh Act to yield when conduct inconsistent with the Act's nondiscrimination principle is specifically authorized by another statute. (*Lazar, supra,* 69 Cal.App.4th at p. 1504.) But no statute authorizes discrimination based on marital status in the setting of automobile rates. And the marital status regulation has the force of law only to the extent it is consistent with its own authorizing statutes. Those statutes prohibit insurers from violating the Unruh Act and the Commissioner from approving rates that run afoul of this prohibition. (§§ 1861.03(a), 1861.05(a).) Thus, the marital status regulation must defer to the Unruh Act's nondiscrimination principle, not the other way around. In my view, neither the case law on which respondents rely nor the other arguments the majority favors can save the marital status regulation, now that the Unruh Act expressly prohibits marital status discrimination.

## A.

Respondents and the trial court rely on section 51(c) and *Lazar* to uphold Regulation 2532.5(d)(9) despite its conflict with the Unruh Act's nondiscrimination mandate. The Commissioner also relies on a federal case called *Chabner*, but aside from their surface similarities, neither case is comparable to the case before us.

In *Chabner, supra,* 225 F.3d 1042, a policyholder alleged that an insurance company violated the Unruh Act by overcharging him for life insurance. (*Chabner,* at pp. 1045–1046.) The policyholder was disabled and did not object to paying a slightly higher premium but alleged his insurer had "substantially overcharged him for any increased mortality risk associated with his disability." (*Id.* at p. 1045.) Insurance Code section 10144 precludes

17

a company issuing life insurance from charging a different rate for the same coverage because of a physical or mental impairment, unless the rate differential is "based on sound actuarial principles or is related to actual and reasonably anticipated experience . . . ." (Ins. Code, § 10144.) The district court found that, using alleged violation of section 10144 as the predicate offense under the Unfair Practices Law (Bus. & Prof. Code, § 17200) and the Unruh Act, the plaintiff had established his right to relief on summary judgment. (*Chabner*, at pp. 1048–1051.) The Ninth Circuit affirmed. (*Id.* at pp. 1048, 1050, 1053.) The *Chabner* court reasoned that if the premium had been based on sound actuarial principles or reasonably anticipated experience, it would not have violated the Unruh Act because it would have been "specifically allowed by statute." (*Chabner*, at p. 1050.) But because the premium was higher than could be justified under section 10144, it was a violation of the Unruh Act as unlawful discrimination based on " 'disability.' " (*Chabner*, at p. 1050, quoting § 51(a).)

The Commissioner asks this court to use the reasoning in *Chabner* as a model for harmonizing the Unruh Act and the Insurance Code, suggesting that if an insurer can show actuarial support for differential pricing based on marital status then it can impose that differential without violating the Unruh Act. This theory completely ignores the crucial difference between the statutory landscape in *Chabner* and in this case. Insurance Code section 10144 authorizes an actuarially-based price differential for consumers with a disability who purchase life insurance. No comparable provision in the Insurance Code authorizes price discrimination based on marital status.[4]

---

[4] The provision that comes closest is section 1861.02, which requires that all optional rating factors be "adopted by regulation" and "have a

18

Thus, neither the reasoning nor the holding of *Chabner* aids the Commissioner here.

For similar reasons, *Lazar* is unhelpful to respondents. *Lazar* was a class action lawsuit against car rental agencies that refused to rent to licensed drivers under the age of 25. (*Lazar, supra*, 69 Cal.App.4th at p. 1500.) A demurrer to the plaintiff's Unruh Act claim was properly sustained, the *Lazar* court found, because the legislative scheme regulating rental car agreements expressly approved a rental agency's adoption of minimum age requirements for drivers. (*Lazar*, at p. 1503, discussing Civ. Code, § 1936.) As age is not enumerated in the Unruh Act, the *Lazar* court noted "statutes permitting age-based discrimination do not necessarily violate the Act." (*Lazar*, at p. 1503.) But even if there were a conflict with the Act, section 1936 would control because it was the more recent and more specific statute. (*Lazar*, at pp. 1503–1504.) And the language of section 51(c)—stating that the Act should not be construed to confer a right or privilege that is otherwise conditioned or limited by law—also supported this conclusion, the court explained. (*Lazar*, at pp. 1503–1504.) Again, *Lazar* does not help respondents because they can point to no statute that authorizes discrimination in automobile insurance rates on the basis of marital status.

There's another important difference between *Lazar* or *Chabner* on the one hand and this case on the other. Appellants are not seeking relief from enforcement of the Unruh Act for conduct expressly authorized by another

---

substantial relationship to the risk of loss." (§ 1861.02, subd. (a)(4).) But these requirements are phrased as necessary, and not sufficient, conditions. The Insurance Code does not authorize the Commissioner to approve an optional rating factor that "ha[s] a substantial relationship to the risk of loss" if use of that factor would violate current civil rights laws. (*Ibid*.; §§ 1861.03(a), 1861.05(a).)

statute, as in those cases. Here, the question is whether the Unruh Act can be enforced against conduct ostensibly authorized by regulation or, phrased differently, whether a regulation is valid if it authorizes discriminatory conduct that would otherwise violate the Unruh Act. For the reasons explained below, I conclude the marital status regulation does not override the commands of the Unruh Act because the regulation is not, itself, authorized by statute.

### B.

Respondents urge—and the majority holds—that the marital status regulation is valid because it has the force of "law" within the meaning of section 51(c), such that the Unruh Act's protections against discrimination must give way before it. (Maj. opn. *ante*, at pp. 12–13.) Although I acknowledge that there may be circumstances where Section 51(c) causes the Unruh Act to defer to a regulation that is properly authorized by statute (see *Agriculture Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392, 420 (*Agriculture Labor Relations Bd.*)), the marital status regulation fails to meet that threshold requirement. It is no longer authorized by any statute, and it therefore does not have the force of law and cannot displace the Unruh Act's nondiscrimination mandate.

The marital status regulation may have been statutorily authorized when it was first adopted.[5] That was the Commissioner's understanding,

---

[5] Because no challenge was brought to the marital status regulation before the Legislature amended the Unruh Act in 2005, no court had occasion to consider whether the Act's protection for *un*enumerated rights would then have invalidated the marital status regulation. I don't read appellants as conceding that the marital status regulation was valid when originally promulgated. (Cf. maj. opn. *ante*, at p. 11.) Their appellate briefs do not take a clear position on this issue, just as they do not address whether some

20

based on his reading of the Act in 1996 when he adopted Regulation 2632.5(d)(9). He cited section 1861.02, 1861.03, and 1861.05 as among the statutory provisions authorizing the regulations and concluded, at that time, that "the use of marital status [was] not unfairly discriminatory within the meaning of the Unruh Civil Rights Act." But that was then; this is now. The regulation's authorizing statutes effectively changed when the Unruh Act did, since section 1861.03(a) incorporates amended, up-to-date versions of our civil rights laws. Today, section 1861.03(a) requires insurers to comply with an Unruh Act that expressly identifies the use of marital status as unfairly discriminatory. Thus, sections 1861.03(a) and 1861.05(a) no longer authorize—indeed they prohibit—a regulation that allows insurers to discriminate based on marital status. A regulation that does not keep pace with changes to its authorizing statute risks becoming " 'no longer valid.' " (*Leslie H. v. Superior Court* (2014) 224 Cal.App.4th 340, 348.) Assuming it was valid when first enacted, that is precisely what has happened to the marital status regulation.

When a statute directs an agency to comply fully with another law, such as the Unruh Act, the agency must also comply with amendments to that other law. (*Aktar v. Anderson* (1997) 58 Cal.App.4th 1166, 1170.) *Aktar* involved a challenge to the authority of the Department of Social Services to administer an aspect of the federal food stamp law in California. (*Aktar*, at

---

insurers have marshaled actuarial support (i.e., established "a substantial relationship to the risk of loss") for charging unmarried drivers higher rates, nor whether the marital status regulation is "reasonably necessary to effectuate the purpose of its authorizing statutes." (Maj. Opn. *ante*, at pp. 2, 9.) Appellants instead train their fire on the signature weakness of the current regulation: It fails the second half of a dual mandate that rates meet actuarial standards *and comply with civil rights laws*. (See §§ 1861.02, subd. (a)(4), 1861.03(a).)

pp. 1173–1174.)  The issue before the court was whether the Department was required to comply with an amendment to the federal law, absent a specific directive from the state legislature.  The *Aktar* court found compliance was required because existing state law already "mandate[d]" that the Department comply with amendments to the federal food stamp law.  (*Id*. at pp. 1177–1178.)  This issue was dispositive in *Aktar* because the Department had "only those powers conferred upon it by law" and "could not validly act in excess of such powers" as the law had changed.  (*Id*. at p. 1176.)  So, too, here.  From its inception, Proposition 103 has mandated that the insurance industry comply with Unruh Act amendments, and since the Commissioner has only those powers conferred on him by Proposition 103, he may not validly authorize insurance rates that violate Unruh Act amendments.

This principle is a specific example of a general rule:  "To the extent that regulations conflict with statutes or decisional law, the law controls the regulations."  (*In re Johnny S.* (1995) 40 Cal.App.4th 969, 978.)  Courts have long recognized a regulation that alters or amends a statute or impairs its scope is invalid.  (*Agriculture Labor Relations Bd.*, *supra*, 16 Cal.3d at p. 426; *Woods v. Superior Court* (1981) 28 Cal.3d 668, 679.)  Thus, contrary to the majority's position here, the conflict between the Commissioner's marital status regulation and the provisions of the Insurance Code mandating compliance with the updated Unruh Act must be resolved in favor of the Insurance Code and the Unruh Act, not the regulation that purports to impair the Act's scope.  (See §§ 1861.03(a); 1861.05(a).)  Because the provisions of the Insurance Code on which the Commissioner relies do *not* authorize the Commissioner to adopt or maintain rate regulations that conflict with the Unruh Act, the deference required by section 51(c) has no application here.

22

The trial court reached a different conclusion by treating Regulation 2532.5(d)(9) as a " 'law' " that conditions and limits the Unruh Act's antidiscrimination protections.  (Citing § 51(c).)  This ruling was error because it rests on an assumption that Regulation 2532.5(d)(9) is currently valid, when that is the very issue that the court was called on to decide.  In concluding that any conflict with the Unruh Act would require the Act to "defer" to the regulation, the court treated Regulation 2532.5(d)(9) as essentially self-validating.  But no quasi-legislative regulation can be divorced from its statutory source.  (Gov. Code, § 11342.2  ["no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute"].)  Agencies " 'do not have discretion to promulgate regulations that are inconsistent with the governing statute.' "  (*Sabatasso v. Superior Court* (2008) 167 Cal.App.4th 791, 796.)  And the governing statute here prohibits the Commissioner from approving rates that violate Proposition 103's mandate that insurers comply with current civil rights laws.  (§§ 1861.03(a); 1861.05(a).)

The majority opinion, like the trial court, reaches a different conclusion because of a quirk of chronology; the marital status regulation was adopted before the Legislature amended the Unruh Act.  (Maj. opn. *ante*, at pp. 2, 8–9.)  The majority acknowledges that this sequence of events is "[c]ritical[]" to its analysis (*id.* at p. 9), and as I understand the logic of its opinion, marital status could not validly be used as an optional rating factor today if Commissioner Garamendi's, rather than Commissioner Quackenbush's, regulations had been in effect when the Legislature amended the Unruh Act

23

to include marital status.[6]  That approach makes no sense to me, as it diverts attention from the bedrock question of whether the regulation is consistent with its authorizing statutes in their current form.  Commissioner Quackenbush adopted the marital status regulation only because he thought the regulation was consistent with the Unruh Act.  Once the Legislature amended the Unruh Act expressly to prohibit marital status discrimination, I would have thought the only reasonable response would be to rescind the discriminatory regulation, rather than to try to justify it on the basis the regulation was on the books before the statute was amended.  The majority acknowledges that Proposition 103 requires insurers to comply with civil rights laws as they are amended, but it then insulates insurers from this requirement by deploying section 51(c) to encase the 1996 regulations in amber.  I know of no authority for reading the rather obscure language of section 51(c) to protect a regulation that is no longer consistent with the statute said to authorize it.

Finally, the majority opinion relies on section 1860.1 in contending that, because neither the Unruh Act nor its 2005 amendments refer to the business of insurance, the specific provision that is the marital status regulation must "prevail[] over the general Act."  (Maj. opn. *ante*, at p. 17, see also, p. 7.)  This argument sets up a false contest between the marital status regulation and the Unruh Act.  The marital status regulation is no longer valid under its own authorizing statutes because it is inconsistent with the current Unruh Act.  And because it conflicts with its own authorizing statute,

---

[6] If Commissioner Garamendi's regulations had been in effect, there would have been no regulation endorsing marital status discrimination for the Commissioner to invoke here as a mechanism for elbowing aside the protections of the Unruh Act.  (Cf. Maj. opn. *ante*, at pp. 11–14.)

it has no independent force with which to go up against the Unruh Act. The rule for choosing between general and specific provisions simply has no application here. And the requirements of section 1860.1 pose no hurdle because the Unruh Act, though it does not itself mention insurance, is expressly incorporated into a statute that is all about the business of insurance (§ 1861.03(a)).

In sum, I conclude section 51(c) does not validate or excuse a regulation that conflicts with the antidiscrimination provisions of the Unruh Act.

**IV.**

Section 11682 of the Insurance Code, which became the RAIN law, was originally enacted to prohibit insurers from discriminating on the basis of race when issuing automobile liability insurance. (Stats. 1955, ch. 125, § 1.) In 1961, the scope of this statute was expanded to preclude such discrimination on the basis of race, color, religion, national origin, or ancestry—the same prohibited characteristics then listed in the 1959 Unruh Act. (Stats. 1961, ch. 1983, § 1; see Stats. 1959, ch. 1866, § 1.) In 2008, the RAIN law was amended again to conform with the Unruh Act. But instead of updating the list of prohibited characteristics to match those then in the Act, the RAIN law was amended to incorporate by reference the antidiscrimination provision of the Unruh Act. The RAIN law now prohibits discrimination in connection with the issuance of motor vehicle liability policies on the basis of "every characteristic listed or defined in subdivision (b) or (e) of Section 51 of the Civil Code." (§ 11628, subd. (a)(1) (§ 11628(a)(1)); see Stats. 2008, ch. 682, § 7.)

The conflict between this provision and the marital status regulation is patent. The RAIN law says no "characteristic listed" in Civil Code, section 51(b) may "of itself, constitute a condition or risk for which a higher rate,

25

premium, or charge may be required of the insured." Section 51(b) lists "marital status" as a protected characteristic. Yet Regulation 2632.5(d)(9) allows an insurer to vary "rates and premiums" based on the "[m]arital status of the rated driver," that is, based on the listed characteristic itself. The RAIN law, like the Unruh Act, was incorporated by general reference into Proposition 103 as both are "civil rights laws" of the state. (§ 1861.03(a).) Thus, Proposition 103 compels the Commissioner to comply with and enforce the current version of the RAIN law. (§§ 1861.03(a), 1861.05(a); 12921, subd. (a), 12926.) Because the current RAIN law precludes automobile insurers from discriminating on the basis of marital status, Regulation 2632.5(d)(9) is contrary to it and is for this reason also invalid. (Cf. *Nortel Networks Inc. v. Board of Equalization* (2011) 191 Cal.App.4th 1259, 1278 [regulatory board's attempt to limit scope of statute through regulation deemed invalid].)

Importantly, the RAIN law *does not* incorporate by reference, or have a counterpart to, the Unruh Act's section 51(c). Thus, although I disagree with my colleagues that the Commissioner can rely on section 51(c) to justify regulations that conflict with section 51(b), that potential escape hatch would in any event not authorize the Commissioner to use an optional rating factor that the RAIN law prohibits. Because marital status is a "characteristic listed . . . in subdivision (b) . . . of Section 51 of the Civil Code," the RAIN law prohibits insurers from using marital status as a basis to discriminate in pricing automobile liability policies. (§ 11628(a)(1).) Full stop.

Respondents contend otherwise; they assert section 11628(a)(1) does not preclude the Commissioner from approving rates that discriminate based on marital status because legislative history materials underlying the 2008

26

RAIN law amendment show that the Legislature did not intend to amend Proposition 103. My colleagues adopt respondents' view, I think in error.

To begin, respondents fail to apply an established rule of statutory construction favoring the plain language of the statute. Because the language of a statute is generally the best indicator of legislative intent, when that language is unambiguous courts " ' " 'presume the Legislature meant what it said, and the plain meaning of the statute governs." ' ' " (*Medical Bd. of California v. Superior Court* (2018) 19 Cal.App.5th 1, 7.) Here, the plain language of the RAIN law prohibits insurers from discriminating on the basis of a characteristic set forth in Civil Code section 51(b), and marital status is on that list. Since the statutory language is clear, we should presume the Legislature meant what it said.

As the majority notes, this " ' "plain meaning" ' " rule does not prohibit courts from considering whether " 'the literal meaning of a statute comports with its purpose.' " (Maj. Opn. *ante*, at p. 19, quoting *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.) "Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute." (*Lungren*, at p. 735.) But here the amended RAIN law language is not only perfectly clear, but fully consistent with its manifest purpose, which is to prohibit insurers from unlawfully discriminating against Californians who need car insurance. (Cf. *King v. Meese* (1987) 43 Cal.3d 1217, 1222; see *id.* at p. 1243 (conc. opn. of Broussard, J.).)

Properly understood, the legislative history underlying the 2008 RAIN law amendment fully supports this plain reading of the statute. (*Homes on Wheels v. City of Santa Barbara* (2004) 119 Cal.App.4th 1173, 1179 [considering legislative history proper where it buttresses plain meaning of statute].) The amendment was part of Assembly Bill 2654, which amended

27

several nondiscrimination statutes that listed categories of protected classes. As explained in analyses of the bill prepared by the Assembly Committee on the Judiciary, the purpose of Assembly Bill 2654 was to "*conform*[] *miscellaneous code provisions prohibiting discrimination in specific government and business operations to those characteristics already covered by non-discrimination laws of general application to government operations and business establishments.*"  The RAIN law amendment was included in the bill in order to ensure consistency with the Unruh Act, to which insurers licensed to issue motor vehicle liability policies were "already subject."  The author of the RAIN law amendment, Assemblymember John Laird, is the same legislator who carried the bill amending the Unruh Act to include marital status discrimination a few years earlier.  Laird contended a reference in the RAIN law to the list of protected classes in the Unruh Act would be less confusing than listing out those classifications in the RAIN law and other statutes covered by his proposed bill.  It would also result in a more consistent legal standard because whenever additional protections were added to the Unruh Act, "these other nondiscrimination laws will be updated automatically."

Like respondents, the majority opinion ignores this legislative history, which shows that the purpose of the 2008 RAIN law amendment was to clarify that the law already prohibited automobile liability insurers from discriminating on the basis of classifications listed in the Unruh Act. Instead, the majority focuses exclusively on an objection to Assembly Bill 2654 by insurance industry advocates who accused Assemblymember Laird of attempting to amend Proposition 103; specifically, they alleged he was attempting to amend the statutory provision that authorizes the Commissioner to establish additional optional rating factors.  (Maj. opn. *ante*,

p. 19.)  Laird disputed that claim in a letter that was later printed in the Assembly Journal.  He clarified that it was "not the intent of [Assembly Bill] 2654 to amend [Proposition] 103 with respect to these rating factors," as the law for many years had been "abundantly clear" that insurers were already subject to the Unruh Act.[7]  In his letter, Laird also acknowledged the obvious fact that if the Legislature intended by statute to change Proposition 103's rating factors, "such a change would amend Proposition 103 statutes and therefore would require a two-thirds vote of the Legislature."  And "[s]imilarly," any change to the optional rating factors would require regulatory action by the Commissioner.

The majority's reliance on Laird's letter is perplexing.  Laird clarified that his proposed bill updating the RAIN law to conform to the Unruh Act did not require an amendment to Proposition 103 because insurers *were already subject to* the Unruh Act.  This legislative history material is fully consistent with a plain reading of the RAIN law, whereby it works in tandem with the Unruh Act to protect Californians seeking automobile insurance from unlawful discrimination.  And Laird's statement that only regulatory action by the Commissioner could change the optional rating factors is not so much an endorsement of the then-existing rating factors, as it is an acknowledgement that approving and disapproving optional rating factors is the Commissioner's responsibility.

Nothing about Laird's letter evinces a legislative intent that the marital status regulation remain unchanged.  Laird explained that changing an optional rating factor would require regulatory action by the Commissioner, and in this writ proceeding appellants ask this court to

---

[7]  When Governor Schwarzenegger signed Assembly Bill 2654, he likewise documented his belief that it did not amend Proposition 103.

compel the Commissioner to engage in just such regulatory action. Appellants ask that we direct the Commissioner to rescind the invalid marital status regulation and to begin enforcing the Unruh Act's and the RAIN law's prohibitions against discrimination based on marital status. Because the marital status regulation is no longer statutorily authorized—because it now conflicts with the Unruh Act and the RAIN law, and thus with sections 1861.03(a) and 1861.05(a)—I would grant appellants' request.

\* \* \*

The Commissioner's extensive powers over automobile insurance rates do not include the right to pick and choose among the state's civil rights laws, requiring insurers to comply with only some of them. I would hold that the marital status regulation is invalid on its face, and appellants are entitled to a writ mandating that the Commissioner replace it.

_____
TUCHER, P. J.

A170267; *Ison et al. v. Lara et al.*

Trial Court: Alameda County Superior Court

Trial Judge: Hon. Evelio Grillo

Counsel:
Olivier & Schreiber and Monique Olivier and Christian Schreiber; Feinstein Doyle Payne & Kravec, Joseph N. Kravec, Jr., Wyatt A. Lison, James M. Pietz, and Kaitlyn M. Burns for Appellants.

Conn Law and Elliot Conn for the Consumer Federation of America as Amicus Curiae on behalf of Appellants.

Harvey Rosenfield and William Pletcher for Consumer Watchdog as Amicus Curiae on behalf of Appellants.

Rob Bonta, Attorney General, Tamar Pachter, Assistant Attorney General, Craig D. Rust, Jennifer T. Henderson and Michael Sapoznikow, Deputy Attorneys General, for Respondent Insurance Commissioner.

Hogan Lovells US, Katherine B. Wellington and Vanessa O. Wells for Respondents Farmers Insurance Exchange and Mid-Century Insurance Company.